AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| ATTILA COLAR | ) | Case No. |
| | ) | |
| | ) | CR 20-91311 SK |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

**FILED**

Sep 22 2020

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____June 2, 2020____ in the county of ____Contra Costa____ in the ____Northern____ District of ____California____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1344 | Bank Fraud |
| | Maximum penalties:  30 years' imprisonment, 3 years' supervised release, $1,000,000 fine |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

Approved as to form  *Barbara J. Valliere*
          AUSA Barbara J. Valliere

/s/ Katherine Ferrato
*Complainant's signature*

FBI SA Katherine Ferrato
*Printed name and title*

Sworn to before me by telephone.

Date: ____September 22, 2020____

*Judge's signature*

City and state: ____San Francisco, CA____

Sallie Kim, U.S., Magistrate Judge
*Printed name and title*

Print   Save As...   Attach   Reset

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Katherine Ferrato, Special Agent, Federal Bureau of Investigation, being duly sworn, hereby state:

## INTRODUCTION AND AGENT BACKGROUND

1.      I submit this affidavit in support of a criminal complaint charging ATTILA COLAR (COLAR) with bank fraud, in violation of Title 18, United States Code, Section 1344.

2.      I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in 18 U.S.C. § 1546(a).

3.      I am a Special Agent for the Federal Bureau of Investigation (FBI), where I have been employed since March 2019.  I am currently assigned to a squad based in Concord, California that is responsible for investigating complex financial crimes.  I completed the five-month FBI Special Agent Basic Training program at the FBI Academy in Quantico, Virginia.  During the course of my employment with the FBI, I have investigated and assisted in the investigation of criminal violations relating to complex financial crimes.  During these investigations, I have participated in and utilized the following investigative tools: conducting physical surveillance, conducting interviews, executing arrest and search warrants, analyzing financial records, and collecting and processing evidence.  Additionally, I have spoken with numerous more-senior Special Agents regarding their training and experience in investigating complex financial crimes.

4.      Recently, I have been assigned to work with the U.S. Department of Justice and other law enforcement partners to investigate possible fraud associated with the stimulus and

economic assistance programs created by the federal government in response to the COVID-19 program.

5.     The facts in this affidavit are based on my personal observations, my review of records and documents, my training and experience and that of other agents, and information obtained from other agents, law enforcement personnel, and witnesses.  The facts contained herein have been obtained by interviewing witnesses and examining documents obtained in the course of the investigation as well as through other means.

6.     This affidavit is intended to show only that there is sufficient probable cause and does not set forth all of my knowledge about this matter.  This affidavit does not include each and every fact known to the government, but only those facts necessary to support a finding of probable cause to support the requested arrest warrant.

## RELEVANT STATUTES

7.     Title 18, United States Code, Section 1344 provides:

Whoever knowingly executes, or attempts to execute, a scheme or artifice— (1) to defraud a financial institution; or . . . (2) to obtain any of the moneys, funds, credits, assets, securities, or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

## RELEVANT ENTITIES

8.     ATTILA COLAR, also known as Dahood Sharieff Bey, Sharieff Dahood Bey, Dawud Sharieff Bey Ahed, Dawud Azadene, Attilla Collan, Sharrieff Pasha, and Georgi Petrakov, operates All Hands on Deck out of 139 Jacaranda Court in Hercules, California.  COLAR has an extensive criminal history, a portion of which is further described below.

9.     All Hands on Deck is a 501(c)(3) nonprofit organization incorporated in Delaware on March 25, 2019 and registered with the California Secretary of State on May 21,

2019.  Per the entity's Articles of Incorporation, All Hands on Deck provides "housing to men getting out of prison, food bank services, life and work skills, trainings, resiliency treatment services, prenatal life skills, and a variety of necessary know hows to survive in today's society."

## FACTS SUPORTING PROBABLE CAUSE

***The Paycheck Protection Program***

10.     The Coronavirus Aid, Relief, and Economic Security (CARES) Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program (PPP).  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.  The PPP is administered by the U.S. Small Business Administration (SBA), which is an executive agency of the United States.

11.     To obtain a PPP loan, a qualifying business must submit a PPP loan application ("SBA Form 2483"), which is signed by an authorized representative of the business.  The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

12.     One affirmative certification required by the form relates to criminal history.  From at least in or around April 2020 to on or about June 10, 2020, Question Six on SBA Form 2483 read: "Within the last 5 years, for any felony, has the Applicant (if an individual) or any owner of the Applicant 1) been convicted; 2) pleaded guilty; 3) pleaded nolo contendere; 4) been placed on pretrial diversion; or 5) been placed on any form of parole or probation (including probation before

judgement)?"  There is an option to check "Yes" or "No" in response to Question Six.  This version

of Question Six appeared on all three of the PPP loans submitted by COLAR and discussed below.

Additionally, just before Questions Five and Six, the form stated: "If questions (5) or (6) are

answered "Yes," the loan will not be approved."

     13.    Later versions of the form that went into effect on June 11, 2020 and June 12, 2020

altered the language of Question Six.  The most recent version of the form shortened the relevant

time period for the felony criminal history requested in Question Six from five years to one year,

with the exception of felonies involving fraud, bribery, embezzlement, or a false statement in a

loan application or an application for federal financial assistance.  The amended version also

removed "4) been placed on pretrial diversion."  These changes were not operative at the time that

COLAR submitted any of the loan applications on behalf of All Hands on Deck that are discussed

below.

     14.    In completing a PPP loan application, the applicant places their initials on a line next

to the statement:

> I further certify that the information provided in this application and the information
> provided in all supporting documents and forms is true and accurate in all material respects.
> I understand that knowingly making a false statement to obtain a guaranteed loan from
> SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment
> of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by
> imprisonment of not more than two years and/or a fine of not more than $5,000; and, if
> submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not
> more than thirty years and/or a fine of not more than $1,000,000.

     15.    In the PPP loan application, the applicant (through its authorized representative) must

state, among other things, its: (a) average monthly payroll expenses; and (b) number of employees.

These figures are used to calculate the amount of money the small business is eligible to receive

under the PPP.  In addition, businesses applying for a PPP loan must provide documentation

showing their payroll expenses.

16.    A PPP loan application must be processed by a participating lending financial institution.  If a PPP loan application is approved by the participating financial institution, that institution funds the PPP loan using its own monies, which are 100% guaranteed by the SBA. Participating financial institutions require that the information provided in PPP loan applications be truthful, including information about the applicant business's employees and payroll expenses.

17.    Information from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lender to the SBA in the course of processing the loan.

18.    PPP loan proceeds must be used by the business on certain permissible expenses— payroll costs, interest on mortgages, rent, and utilities.  The PPP allows the interest and principal on the PPP loan to be entirely forgiven if the business spends the loan proceeds on these expense items within a designated period of time and uses at least 60% of the PPP loan proceeds on payroll expenses.

**COLAR's Aliases and 2015 Felony Conviction**

19.    According to information retained by the California Law Enforcement Telecommunication System (CLETS) as of May 15, 2020, COLAR is also known by the following aliases: Dahood Sharieff Bey, Sharieff Dahood Bey, Dawud Sharieff Bey Ahed, Dawud Azadene, and Attilla Collan.  During the course of this investigation, I determined that COLAR is also known by the names Sharrieff Pasha and Georgi Petrakov.







20.   In 2014, COLAR, his mother, and five others associated with the Black Muslim Temple in Oakland were arrested on charges associated with running a fraud in connection with a security company and a janitorial service.  In the affidavit supporting the charges, the Alameda County District Attorney's Office alleged that BMT International Security Services succeeded in obtaining public contracts by submitting false paperwork, including applications and proof of insurance.

21.   In that case, COLAR was convicted of 14 counts of California Penal Code § 115 (filing a false document), three counts of California Revenue and Tax Code § 19706 (tax evasion), three counts of California Penal Code § 487(a) (grand theft), and one count of California Penal Code § 182(a)(1) (conspiracy to commit a crime).  COLAR pleaded no contest to the charges and was sentenced to five years in California state prison.  According to the Alameda Superior Court online database for the case, COLAR was convicted and sentenced on October 6, 2015.  According

to an appellate decision affirming the conviction (but recalculating time served), COLAR pleaded no contest on October 6, 2015, and was sentenced on November 5, 2015.  *See The People v. Dahood S. Bey*, A147296 (1st Appellate District, Division Four, November 17, 2017).

**COLAR doing business as Sharrieff Pasha**

22.    As previously mentioned, All Hands on Deck is a 501(c)(3) nonprofit organization that provides transitional housing services to former inmates.  On or about June 2, 2019, All Hands on Deck contacted GEO Reentry Services to compete for the opportunity to provide Specialized Treatment for Optimized Programming (STOP) for the California Department of Corrections and Rehabilitation (CDCR).  The CDCR modality cost sheet submitted in response to GEO Reentry Service's Request for Qualifications (RFQ) lists Sharrieff Pasha as the contact for All Hands on Deck and provides an email address and phone number.  During the course of this investigation, I have learned that the phone number and email address listed are used by COLAR.  Furthermore, CDCR requires sub-contractors, such as All Hands on Deck, to apply for security clearances on behalf of their employees who will be working with former inmates. Sharrieff Pasha submitted the required security clearance applications to CDCR on behalf of the employees at All Hands on Deck, including for COLAR.

**COLAR's Submission of a Fraudulent PPP Loan Application**

23.    On or about June 2, 2020, COLAR submitted a PPP loan application to Celtic Bank, through Liberty Small Business Finance (Liberty SBF), on behalf of All Hands on Deck.  Celtic Bank is a privately-owned industrial bank headquartered in Salt Lake City, Utah, and is insured by the FDIC.  Liberty SBF is a full service commercial real estate finance company, headquartered in Philadelphia, Pennsylvania, that provides loan origination, loan servicing, and lender services. The application was submitted electronically via Liberty SBF's web portal.  On or about June 9,

2020, additional information was sent to Liberty SBF via email from allhandsondeckinnk@gmail.com. Furthermore, on or about June 12, 2020, COLAR digitally signed the Closing Document Package for the loan with DocuSign eSignature. The DocuSign eSignature recorded COLAR's Internet Protocol (IP) address as 24.130.186.153.[1] This same IP address had previously been associated with an account with the billing address of 139 Jacaranda Court in Hercules, California.

24. On the loan application, COLAR listed the business address as 139 Jacaranda Court in Hercules, California. This address is a two-story, three-bedroom residence where COLAR lived with his family at the time he submitted the application.

25. As part of the PPP loan application to Celtic Bank, COLAR submitted several payroll documents for All Hands on Deck. The submitted documents purported to verify and confirm the amount of payroll incurred by All Hands on Deck for 2019, and the first quarter of 2020. The documents included IRS Form 941 Employers Quarterly Federal Tax Returns (IRS Form 941), IRS Form 940 Employer's Annual Federal Unemployment Tax Return (IRS Form 940), and an Annual Employee Pay History Report.

26. A handwritten version of the PPP loan application, signed by COLAR and dated on or about June 2, 2020, was found during a search of 139 Jacaranda Court on or about July 1, 2020. Attached to the application was a sticky note that read "New New Application Submitted to Liberty PPP." A hard copy of the supporting documentation submitted to Liberty SBF was also found with the application.

---

[1] An IP address is similar to a telephone number in that it is used to identify a specific computer or device connected on the internet at a given time. Unlike phone numbers, most IP's are dynamic, meaning that the IP address for a particular computer or device can change over time. Internet Service Providers (ISP), such as Comcast Cable Communications (Comcast), assign IP addresses when the ISP connects their customers to the internet. ISPs maintain recorded log files of IP addresses that are assigned to specific customer accounts.

27. The original application was for a loan in the amount of $2,000,000. It indicated that All Hands on Deck had 81 employees and average monthly payroll expenses of $776,901. The owner name was listed as "Nonprofit 501(c3)."

28. Once a PPP loan application is submitted to Liberty SBF, reviewing and finalizing the application can be an iterative process that requires coordination between the applicant and the assigned Business Development Officer (BDO). Changes can be made with the applicant's consent to, for example, clarify ownership information and/or adjust the loan amount that the business qualifies for based on the supporting documentation submitted. COLAR's phone records during the time period the application was submitted support this. The records reveal 21 calls that were successfully completed and lasted for longer than 30 seconds between COLAR and two employees of Liberty SBF from on or about May 29, 2020 to on or about June 13, 2020.

29. The approved application was for the amount of $1,113,112. It indicated that All Hands on Deck had 81 employees and average monthly payroll expenses of $445,245. The owner name was listed as "Attila Colar" and his title was "Authorized Representative." Furthermore, COLAR answered "No" to Question Six on the application.

30. The PPP funds from the approved loan application were dispersed on or about June 16, 2020 to a business checking account ending in -0770 at U.S. Bank.

**All Hands on Deck Financials**

31. According to financial records provided by Mechanics Bank, COLAR opened Smart Business Checking Account, account number ending -8345, for All Hands on Deck on or about November 27, 2019. COLAR was designated as the "natural person opening" the business account and as an authorized representative of All Hands on Deck, and as a signer for this business account. COLAR is the only authorized signer for the account.

32.   A review of financial records for this business checking account for the time period covering in or around January 1, 2020 through May 29, 2020 identified a total of approximately $162,641.82 deposited into the bank account.  The source of the deposited funds are from invoice payments, monthly house rental payments, and cash deposits.  During the same time period, a total of approximately $165,741.82 was withdrawn from the account.  The withdrawals were used for monthly bill payments, daily living expenses, and cash withdrawals.  This includes two large cash withdrawals of $57,000.00 and $28,000.00, occurring on or about April 2, 2020, and on or about May 14, 2020, respectively.

33.   Based on a review of these financial records, no payments were made from that checking account to a payroll bank account, payroll checks, or quarterly employment tax payments to the IRS or California's Employment Development Department (EDD).  Based on my training and experience, and that of other agents, it does not appear that COLAR was making payroll payments from that checking account.

34.   Based on the activity in the account, the Mechanics Bank account ending in -8345 appears to have been a primary checking account for All Hands on Deck from in or around January 1 to May 29, 2020.  The account was closed by Mechanics Bank on or about May 29, 2020.

35.   According to financial records provided by U.S. Bank, COLAR opened Silver Business Checking Account, account number ending -0770, for All Hands on Deck on or about May 19, 2020.  COLAR is the only authorized signer for the account.  Furthermore, COLAR certified, via electronic signature, the following statement:

I, ATTILA C COLAR, HEREBY CERTIFY:
- I am the duly elected, qualified and acting Secretary / Authorized Officer of the non-profit organization named *ALL HANDS ON DECK INCORPORATED ("Corporation") which is organized, validly existing, and in good standing under applicable laws.
- As of 05/19/20 (date), this resolution is duly authorized, in full force and effect, and

has not been amended or rescinded.

- The following individuals are designated as authorized agents of the Corporation. The authorities granted by this resolution have not been revoked, modified, annulled or amended in any manner whatsoever. Any authority granted shall remain in full force and effect until revoked in writing by the Corporation.

36.   On or about June 16, 2020, the account ending in -0770 received an ACH transfer of $1,113,100.  On the bank statement for the period of June 1, 2020 to June 30, 2020, the transaction description is "Electronic Deposit From LIBERTY SBF LP."

***Tax Forms Filed with the Internal Revenue Service***

37.   As stated above, COLAR submitted several payroll documents for All Hands on Deck as part of the PPP loan application to Celtic Bank.

38.   COLAR submitted IRS Form 941 to Celtic Bank for the third quarter of 2019.  This form appears to be signed by COLAR and dated October 30, 2019.  The tax form reported 45 employees receiving wages; $1,164,146.61 in total wages, tips and other compensation paid; $291,036.27 in total federal income tax withheld; and $312,766.67 in total deposits made on behalf of All Hands on Deck to the IRS.

39.   COLAR submitted IRS Form 941 to Celtic Bank for the fourth quarter of 2019.  This form appears to be signed by COLAR and dated January 20, 2020.  The tax form reported 81 employees receiving wages; $2,330,705.10 in total wages, tips and other compensation paid; $542,009.77 in total federal income tax withheld; and $599,071.76 in total deposits made on behalf of All Hands on Deck to the IRS.

40.   COLAR submitted IRS Form 941 to Celtic Bank for the first quarter of 2020.  This form appears to be signed by COLAR and dated April 30, 2020.  The tax form reported 81 employees receiving wages; $2,330,705.10 in total wages, tips and other compensation paid; $542,009.77 in total federal income tax withheld; and $599,071.76 in total deposits made on behalf

of All Hands on Deck to the IRS.  The amounts reported on the IRS Form 941 for the first quarter

2020 and fourth quarter 2019 are identical.  In response to a subpoena issued to All Hands on

Deck, COLAR provided Forms 941 among other documents.  The Forms 941 provided in response

to the subpoena match the Forms 941 listed above that were submitted to Celtic Bank.  However,

IRS records indicated that no Forms 941 have been filed with the IRS for All Hands on Deck for

the third and fourth quarters of 2019 or the first quarter of 2020.

   41. COLAR also provided, in response to the subpoena issued to All Hands on Deck,

IRS Form W-3 Transmittal of Wage and Tax Statements signed January 30, 2020.  Form W-3 is

used by employers to summarize the amount of wages, Federal, Social Security, and Medicare

taxes withheld from employees for a particular tax year.  Form W-3 is usually accompanied by

Forms W-2 that employer files with IRS and Social Security Administration.  The Form W-3

COLAR provided for All Hands on Deck lists the total number of Forms W-2 as 81, total wages,

tips, and other compensations in box 1 as $5,342,942.66, however box 2, Federal Income Tax

Withheld is blank.  This contradicts the Forms 941 that COLAR provided to Celtic Bank that

indicated Federal Income Taxes were withheld and paid to the IRS.  Furthermore, IRS records do

not show any filed Forms W-2 on behalf of All Hands on Deck for tax year 2019.  IRS records

reveal that three W-2s show wages were paid to COLAR during tax year 2019.  However, none of

these W-2s were for All Hands on Deck—there were no W-2s filed from All Hands on Deck for

COLAR.  COLAR is listed as CEO of All Hands on Deck on the Annual Employee Pay History

Report ending December 31, 2019 that was provided to Celtic Bank.  This report also lists

COLAR's average monthly salary of $11,789.41 and annual salary of $82,525.87 for the seven

months captured in the report.  Based on these records (payroll report and forms 941), All Hands

on Deck would have been required to file W-2s with the IRS for COLAR as well as the other

employees listed.

42.    COLAR's personal tax returns filed for tax year 2019 only reports $1 of taxable interest.  It is believed that this tax return was filed solely for the purpose of receiving the Economic Impact Payments (EIP, or "Stimulus Check") for individual taxpayers through the CARES Act.

43.    In response to individuals that did not have a tax return filing requirement with IRS[2] for 2019, an online tool was created that allowed taxpayers to provide the IRS information about themselves and their family in order for IRS to determine their eligibility and send a stimulus check to them, as authorized under the CARES Act.  This tool was called the "Non-Filers Tool," and could be accessed through the IRS' webpage.  According to data logs maintained by the IRS, COLAR submitted his information using this tool on or about May 5, 2020.[3]  COLAR also submitted information related to Dahood Bey, another identity that COLAR uses.

44.    The "Non-Filers Tool" requires the taxpayer to enter basic personally identifiable information such as name, social security number, address, and number of dependents.  The tool then creates a basic 2019 U.S. Individual Tax Form 1040 filing.  Tax returns created by using the tool are identified with $1 of taxable interest income, $1 total Income, and $1 Adjusted Gross Income (AGI).

45.    As part of the investigation, law enforcement obtained U.S. Individual Income Tax Return Form 1040 with Document Locator Number (DLN) 80221526550940 and 80221526853400 for COLAR and Dahood Bey, respectively.  Both tax returns exhibit the above characteristics of $1 of taxable interest income, $1 total income, and $1 AGI.  Furthermore, data

---

[2] Generally, individuals that receive veteran's disability compensation, a pension, or survivor benefits from the Department of Veterans Affairs, or have income below $12,200 (for 2019) are not required to file a tax return with the IRS.
[3] The time zone for this data is maintained in UTC, it is believed that COLAR was located in PST during his submission process.

captured from the use of the online tool indicates that it was used to request stimulus checks for COLAR and Dahood Bey.

46.     In order to transmit the Form 1040, the individual must agree, under penalties of perjury, that "I have examined this return (or request for refund) including any accompanying statements and schedules and, to the best of my knowledge and belief, it is true, correct, and complete."  However, on the Annual Employee Pay History Report for All Hands on Deck that COLAR provided to Celtic Bank as part of the PPP Loan application, COLAR's name is listed as CEO with the annual pay amount of $82,525.87.  If this pay amount is correctly stated, which was used in part by Celtic Bank to approve the loan amount, then COLAR's Form 1040 is false.

***Individuals Listed on Employee Payroll Report***

47.     Included in the PPP application submitted to Celtic Bank, via Liberty Small Business Finance, is an All Hands on Deck's Annual Employee Pay History Report ("payroll report"), generated on May 19, 2020, for the time period from April 1, 2019 to December 31, 2019.  The report lists 81 employees, their average monthly salaries, and their overall pay for a specified number of months.

48.     I compared a subset of the names and salaries listed on the payroll report to information gathered from other sources, including interviews and a search warrant executed at 139 Jacaranda Court.  Several examples are outlined below.

49.     <u>Georgi Petrakov, COLAR's alias</u>: On the payroll report, Georgi Petrakov was listed as the "Asst. Nutrition Director" with an average monthly salary of $12,425.98 and overall pay of $74,555.88 for six months.  However, as previously noted, Georgi Petrakov is one of COLAR's aliases. It was the identity he provided to the property manager for 139 Jacaranda Court in Hercules, California as part of his rental application.  I have not been able to identify any evidence

that there is a real Georgi Petrakov who works for All Hands on Deck.  Based on my training and experience and that of other agents, I believe COLAR simply listed one of his aliases as the "Asst. Nutrition Director" for All Hands on Deck.

50.   V.T., Independent Contractor: On the payroll report, V.T. was listed as the "Program Director" with an average monthly salary of $10,964.23 and overall pay of $98,678.07 for nine months.  However, according to a signed document titled "Independent Contractor Agreement," V.T. was hired as an independent contractor on or about December 31, 2019 with the expectation that he would be compensated $32 per hour for services provided.  In an interview, V.T. confirmed s/he sent a total of three invoices to All Hands on Deck for services provided: the first on or about January 31, 2020 for $1,344, the second on or about March 1, 2020 for $1,558, and the last on or about April 1, 2020 for $640.  In total, V.T. received $3,542 from All Hands on Deck from in or around January 2020 to in or around April 2020.

51.   D.S., Consultant: On the payroll report, D.S. was listed as the "Procurement Director" with an average monthly salary of $9,988.03 and overall pay of $89,892.27 for nine months.  D.S. is a managing partner at a firm that provides government and non-profit consulting services.  The consulting firm was hired by All Hands on Deck to assist in research and writing for grants related to sober living.  Over the course of its relationship with All Hands on Deck, the consulting firm received five checks in payment for services: the first as a retainer fee on or about December 3, 2019 for $3,500, the second on or about January 5, 2020 for $3,500, the third on or about February 7, 2020 for $3,500, the fourth on or about March 8, 2020 for $3,500, and the final as an end of contract payment on or about April 10, 2020 for $1,500.  In total, D.S. and the consulting firm received $15,500 from All Hands on Deck from in or around December 2019 to in or around April 2020.

52.    S.W., Employee: On the payroll report, S.W. was listed as the "Admin Director" with an average monthly salary of $9,375.96 and overall pay of $84,383.64 for nine months.  In an interview, S.W. confirmed that s/he was employed by All Hands on Deck from October 2019 to February 2020.  According to S.W.'s contract, s/he was supposed to make $2,500 per month.  However, S.W. made approximately $600 to $800 per month during S.W.'s employment with All Hands on Deck.

53.    D.A., Resident: On the payroll report, D.A. was listed as a "Nurse Practitioner" with an average monthly salary of $13,675.20 and overall pay of $54,700.80 for four months.  According to open source records checks, D.A. does not hold a current nursing license in the State of California.[4]  A search of All Hands on Deck's business address revealed a document titled "All Hands on Deck Resident Contract," indicating that D.A. became a resident in All Hands on Deck's transitional housing program on or about August 18, 2019.  D.A. confirmed that s/he did some work for All Hands on Deck but never received payment for it.

54.    Additionally, several of the individuals included on the payroll report as the "CFO," "Asst. MD Director," "Cont. Case Manager," and a "Nurse Practitioner" are currently, or were previously, residents with All Hands on Deck.

***Additional PPP applications***

55.    Two additional PPP applications were submitted on behalf of All Hands on Deck: one to Mechanics Bank on or about April 9, 2020 and one to Fountainhead Commercial Capital ("Fountainhead") on or about May 22, 2020.  COLAR is listed as the CEO on both applications.  The application submitted to Mechanics Bank indicated that All Hands on Deck had 73 employees,

---

[4] The California Department of Consumer Affairs maintains an online tool called "DCA License Search" (URL: https://search.dca.ca.gov/) that allows users to verify licenses issued within the state, including by the Board of Registered Nursing.

average monthly payroll expenses of $775,237, and had requested a loan of $2,422,615.  The application submitted to Fountainhead indicated that All Hands on Deck had 73 employees, average monthly payroll expenses of $647,284, and had requested a loan of $1,618,200.

56.    As previously stated, agents executed a search warrant at 139 Jacaranda Court in Hercules, California, COLAR's residence and All Hands on Deck's business address.  During the search, agents found PPP applications and supporting documentation related to two additional companies – Oversight Security, Inc. and The Family Investment Group, Inc.  As the agents executed the search warrant, COLAR attempted to destroy records related to these PPP applications by flushing them down the toilet.

57.    Further investigation revealed that there were four PPP applications filed on behalf of Oversight Security: one with Celtic Bank (via Liberty SBF) on or about June 19, 2020, one with Radius Bank on or about the same day, one with Seattle Bank on or about June 27, 2020, and one with Fundera on or about June 28, 2020.  On all four applications, M.B. was listed as the CEO and 85% owner of Oversight Security.  The applications to Celtic Bank and Radius Bank indicated that Oversight Security has 217 employees with monthly payroll expenses of $1,157,259.92 and requested a loan of $2,893,149.79.  The application to Seattle Bank indicated that Oversight Security has 217 employees with monthly payroll expenses of $1,157,249 and requested a loan of $1,896,063.  The application to Fundera indicated that Oversight Security has 217 employees with average monthly payroll expenses of $1,157,259 and requested a loan of $2,893,147.

58.    Included in all four PPP applications was a Form 940 for 2019 and a Form 941 for the first quarter of 2020.  The Forms 940 were signed by M.B. and claim that payments made to employees in 2019 totaled $13,887,108.  The Forms 941 were also signed by M.B. and listed that in the first quarter of 2020, Oversight Security paid 211 employees total wages of $3,399,598 and

withheld $210,775 in Federal Income Tax from wages.  As of September 3, 2020, Oversight Security had not filed any tax returns with the IRS.

59.    Attempts to interview M.B. were futile.

60.    Documents from COLAR's house revealed an unfiled "Fictitious Business Name Statement" with the Solano County Clerk, on behalf of Oversight Security listing only himself, Attila Colar, as the owner of the company.  Agents also recovered an Account Summary document from Bank of America for Business Advantage Checking Account ending in -7694 with the title "BDA Oversight Security Attila Conark Colar Sole Prop."  The account opening documents from Bank of America indicated that the account was opened on or about June 25, 2020 and confirm that COLAR is the sole owner listed on the account.  The Bank of America account ending in -7694 was the account provided on all four PPP applications.

61.    Further investigation also revealed that there were two PPP applications filed on behalf of The Family Investment Group: one with Celtic Bank (via Liberty SBF) on or about June 16, 2020, and one with Fountainhead on or about June 18, 2020.  On both applications, B.W. is listed as the CEO and 90% owner of The Family Investment Group.  Both applications indicate that The Family Investment Group has 248 employees with monthly payroll expenses of approximately $1,324,116 and request loans of $3,310,241.05 and $3,310,000, respectively.

62.    Included in the PPP loan applications sent to both Fountainhead and Liberty SBF was a Form 940 for 2019 signed by B.W. and claiming that the company had made payments to employees for 2019 totaling $15,899,397.  Included in the loan application sent to Liberty was a Form 941, also signed by B.W., that indicates in the first quarter of 2020, The Family Investment Group paid 248 employees total wages of $3,974,850 and withheld $246,441 in Federal Income Tax from wages.  As of September 3, 2020, The Family Investment Group had not filed any tax

returns with the IRS.

63.     Attempts to interview B.W. were unsuccessful; he refused to speak with agents on multiple occasions.

64.     Documents recovered from COLAR's house revealed that COLAR filed a "Fictitious Business Name Statement" with the Solano County Clerk, on behalf of The Family Investment Group listing only himself, Attila Colar, as the owner of the company on or about June 25, 2020. Also among documents found during the search, agents recovered a Business Account Application at Wells Fargo Bank in Hercules, California, seeking to open a checking account for Attila C. Colar "DBA The Family Investment Group," and listing himself as the "sole owner" of the business.   The account opening documents from Wells Fargo indicated that the account was opened on or about June 25, 2020 and confirmed that COLAR is the sole owner listed on the account.   The account, ending in account number -5672, was the account provided on the PPP application to Celtic Bank via Liberty SBF.

## **CONCLUSION**

65.     Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that beginning on a date unknown, but from at least in or around June 2, 2020 to June 16, 2020 within the NORTHERN DISTRICT OF CALIFORNIA, ATTILA COLAR violated 18 U.S.C. § 1344 (Bank Fraud).

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

/s/ Katherine Ferrato
_____
Special Agent Katherine Ferrato
Federal Bureau of Investigation

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 41 and 4(d) on this __22__ day of September, 2020.  This application and warrant are to be filed under seal.

_____
The Honorable SALLIE KIM
United States Magistrate Judge